Argued and submitted June 12, 1997, affirmed February 11, 1998

Deborah C. LOOMIS, Ph.D.,
*Petitioner,*

*v.*

BOARD OF PSYCHOLOGIST EXAMINERS,
*Respondent.*

(CA A90800)

954 P2d 839

David C. Force argued the cause and filed the briefs for petitioner.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

Edmonds, J., concurring.

## ARMSTRONG, J.

Petitioner seeks review of an order of the Board of Psychologist Examiners that disciplined her for violating its rules of professional conduct. Petitioner contends, *inter alia*, that the Board exceeded its authority by disciplining her for her testimony in an affidavit and at a hearing in a domestic relations proceeding and that the Board's decision was not supported by substantial evidence. We affirm.[1]

The facts as found by the Board are as follows. At all relevant times, petitioner was a licensed psychologist with a practice in Eugene. In April 1992, petitioner began seeing Theresa Ingram and her two children at least once a week for therapy. Theresa Ingram was involved in a dissolution proceeding initiated by her husband, Dan Ingram, and a key issue was the custody of the two children.[2] Pursuant to an interim custody order, Dan Ingram had physical custody of the children during the week, and Theresa Ingram had weekend visitation. At the request of Theresa Ingram's attorney, petitioner prepared an affidavit to be used in support of Theresa Ingram's motion to modify the interim order. In the affidavit, petitioner stated:

> "Having taken an extremely comprehensive history from Mrs. Ingram, *I conclude she has been consistently psychologically and physically battered by her husband. * * * She has adjusted to and accepted pervasive psychological abuse, socioeconomic helplessness, sexual coercion, and humiliation and physical intimidation (slapping, pinning, shaking) punctuated with occasional battery.*"

---

[1] Petitioner makes a number of claims, most of which center on whether she testified truthfully at a show-cause hearing. The Board contends that we need not address those claims, because its decision was based solely on the testimony in petitioner's affidavit. We conclude that the affidavit must be read in the context of petitioner's hearing testimony, because petitioner testified as to the content of the affidavit at the hearing. However, we do not reach petitioner's argument that the Board's decision punishes her for the content of her speech, in violation of Article I, section 8, of the Oregon Constitution. That argument was not raised below, and we will not consider it for the first time on judicial review.

[2] Theresa was five months' pregnant at the time, and the custody of the as yet unborn child was at issue as well.

(Emphasis supplied.) Petitioner later stated:

> "I see no need or justification to remove these boys from their mother, which, due to their ages, they experience as a drastic loss and abandonment. *I believe that their best interests would be served by spending as much time as possible in the care of Mrs. Ingram.*"

(Emphasis supplied.)

In response to the motion and affidavit, the trial court ordered Dan Ingram to appear and show cause why the temporary order should not be modified. Petitioner testified at that hearing. As part of her testimony, she explained that she was Theresa Ingram's therapist and that she had been treating Theresa Ingram and the children. She further testified that she had prepared the affidavit in that capacity. On cross-examination, petitioner acknowledged that she had not spoken with or examined Dan Ingram. After the hearing, the court modified Theresa Ingram's visitation schedule as she had requested in her motion, giving her physical custody of the children every other week.

On September 18, 1992, Dan Ingram filed a written complaint with the Board, claiming that, when petitioner submitted the affidavit and later offered testimony at the show-cause hearing, she had violated the Board's ethical rules. After a contested-case hearing, the Board issued its final order on the complaint. In that order, it made the following finding of ultimate fact:

> "Through an affidavit prepared for and filed with the Circuit Court for Lane County in support of an order to show cause in a child custody matter, [petitioner] made inappropriate representations and recommendations which might lead to a misuse of her influence. Such inappropriate representations and recommendations contributed to a court order directed to the father involved and diminished his legal right to custody of his children and the rights of the children to a fair and impartial opinion where their custody was concerned. In making representations and recommendations in the affidavit about the actions of the father and an evaluation about the best interests of the children for custody purposes, [petitioner] failed adequately to disclose her bias toward her client and reservations which affected

the validity and reliability of her recommendations. [Petitioner] thereby failed to strive to ensure that the results of her assessments would not be misused by others."

The Board concluded that, by submitting the affidavit, petitioner had violated various principles of the Board's Code of Professional Conduct.

Petitioner first argues that the Board could not penalize her for her actions, because at the time that she prepared the affidavit there were no appropriate standards of professional responsibility in place. That argument is without merit. Petitioner signed the affidavit on May 2, 1992. The show-cause hearing was held on June 22, 1992. OAR 858-10-075, effective February 16, 1990, was in effect at that time. Pursuant to that rule, the Board had adopted the American Psychological Association's (APA) "Ethical Principles of Psychologists," adopted by the APA's Council of Representatives on June 2, 1989, as the official Code of Professional Conduct for psychologists in Oregon. That version of the rule was in effect in May 1992.

■ Petitioner next contends that the Board had no authority to penalize her for her testimony in the affidavit or at the hearing, because there was no finding that her testimony at the hearing was false.[3] Petitioner misunderstands the focus of the Board's concern. The Board may impose sanctions when it finds that a licensee is guilty of unprofessional conduct in the practice of psychology. ORS 675.070(2)(d). Unprofessional conduct includes any conduct contrary to recognized standards of ethics of the psychological profession. ORS 675.070(2)(d)(A). The Board found that petitioner's preparation and submission of her affidavit violated a number of the Ethical Principles adopted by the APA.[4] The violation of any one of those Ethical Principles is subject to sanctions. Of particular concern to the Board was petitioner's violation of Ethical Principles 3.c and 8.c.

---

[3] Petitioner does not assert that she could not be disciplined for providing false testimony, although she later argues that her testimony, even if false, is privileged and therefore cannot subject her to civil liability. A licensing agency may discipline a licensee for false trial testimony, however, even if that individual is immune from civil suit. *See, e.g., In re Glover*, 156 Or 558, 68 P2d 766 (1937) (attorney who gave false testimony in a hearing in a county court suspended from practice of law for three years).

[4] The Board did not address the content of petitioner's testimony at the hearing in its order. *See* note 1. To the extent that petitioner's testimony may affect or inform the Board's findings, we include that testimony in our analysis.

Principle 3.c provides:

"In their professional roles, psychologists avoid any action that will violate or diminish the legal or civil rights of clients or of others who may be affected by their actions."

The Board found that petitioner had violated that principle when she prepared an affidavit for the purpose of affecting the custody and visitation rights of Dan Ingram and when, in that affidavit, she stated an opinion as to the relative merits of the parents in terms of the best interests of the children without having fully evaluated both parents. At the hearing, petitioner again testified that the children's best interest would be served by modifying the custody order. Petitioner argues that her action could not have affected Dan Ingram's custody rights because, pending a final dissolution order, he had no legal right to custody of the children. We reject that argument. Even though permanent custody of the children had not yet been determined, a temporary custody order establishes custody and visitation rights that can then be changed only through court action. Petitioner's affidavit and testimony were specifically designed to affect the court's temporary custody determination.

Principle 8.c provides:

"In reporting assessment results, psychologists indicate any reservations that exist regarding validity or reliability because of the circumstances of the assessment or the inappropriateness of the norms for the person tested. Psychologists strive to ensure that the results of assessments and their interpretations are not misused by others."

The Board found that petitioner's affidavit had stated an opinion as to the best interests of the children and had purported to compare the relative merits of the parents without clearly stating that the opinion was based solely on interviews with Theresa Ingram. Although petitioner admitted at the hearing that she had not conducted a full evaluation of both parents' abilities, she persisted in stating an opinion as to what she believed was the best interests of the children. Whether petitioner believed her testimony to be truthful, and no party has expressed the belief that it was not truthful, is beside the point. The issue is not what petitioner *said*, but what petitioner did *not* say. The Board was concerned that

petitioner did not fully inform the court, either in her affidavit or in her testimony, of her bias or motivation in preparing the affidavit.

■     Relying on *Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980), petitioner next contends that the Board was required to make findings on the prevailing professional standards to which petitioner was answerable and that the Board erred when it relied on expert testimony as to whether petitioner's conduct was unprofessional. Petitioner's reliance on *Megdal* is misplaced. At issue in that case was the Board of Dental Examiners' authority to impose sanctions for unprofessional conduct without first having adopted a specific code of conduct. The court was concerned that regulatory standards be readily ascertainable by those regulated and not the product of "unarticulated understandings about professional manners and mores." *Megdal*, 288 Or at 307. The purpose of adopting a set code of conduct, wrote the court, was to "give notice of censurable conduct and [confine] disciplinary administration to the announced standards." *Id.* at 314. As for expert testimony, the court in *Megdal* rejected only the use of experts to determine professional standards on a case-by-case basis, not the use of expert testimony to explain how an individual's actions may have violated previously established standards. *Id.* at 306. In this case, the Board *was* relying on a set code of conduct. Despite petitioner's suggestion to the contrary, the Board was well within its delegated authority to adopt the APA standards as the standards to be followed by Oregon practitioners.

■     Petitioner's final argument is that the Board's decision was not supported by substantial evidence. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding. ORS 183.482(8)(c). We review to determine whether a reasonable person could have made the findings supporting the decision, not whether a reasonable person could have made different findings. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 296, 787 P2d 884 (1990); *Shakerin v. MVD*, 101 Or App 357, 360, 790 P2d 1180 (1990). At issue here is whether petitioner's representations in her affidavit that Theresa Ingram was battered by her husband and that a

modification of the custody order would be in the children's best interest, in the light of petitioner's testimony at trial, constituted an ethical violation. The Board found that the affidavit did not sufficiently disclose petitioner's partiality toward Theresa Ingram or the fact that petitioner's conclusions were based solely on information that had been given to her by Theresa Ingram. The Board further found that petitioner's affidavit offered an opinion reflecting on Dan Ingram's relative merit as a custodial parent, even though petitioner had not interviewed him or reviewed any information about him other than what she had been told by Theresa Ingram. Moreover, the Board found that petitioner had represented as fact that Theresa Ingram had been abused by Dan Ingram but did not inform the court that she had no evidence of such abuse other than what she had been told by Theresa Ingram.

The Board did not expressly address the content of petitioner's trial testimony in its findings and conclusions, however, and petitioner argues that her testimony at trial, where she revealed her partiality, absolves her of any ethical impropriety. Although petitioner did admit her role as Theresa Ingram's therapist at trial, and it is clear from the transcript that the trial court understood that petitioner had not spoken with Dan Ingram, the Board was not required to find that petitioner's trial testimony cleansed the affidavit of the ethical defects that the Board found, specifically that

"[petitioner] expressed her professional opinion to the court in an affidavit about the [actions of] the father and the welfare of the children in a manner which entitled the court to assume that she was giving a considered, impartial and expert opinion. * * * She knew that the representations and recommendations of a licensed clinical psychologist might be influential with the court."

During the show-cause hearing, the following colloquy occurred between the trial court and petitioner:

"[The Court]: Other than the fact that it might seem fair, that is to the parent, how do you see the children reacting to such an arrangement * * *? Do you think this would be a bad idea or if it's not a good idea do you see any substantial harm coming from such an arrangement?

"[Petitioner]: I think it's an excellent idea. I see no substantial harm. I think it would give the children a week with each parent. A week rotation would give them a chance to get settled with each parent, to feel connected to each * * * parent."

Although petitioner argues that the trial court knew at all times that petitioner was not an impartial witness, petitioner's testimony as to the best interests of the children could have been understood by the court to be her unbiased, professional opinion.

■    In addition, the Board heard, and properly could consider, testimony by Dr. Cynthia Sturm, a licensed psychologist in Oregon who has taught professional ethics since 1985 and who served on the Ethics Committee of the Oregon Psychological Association for six years. Sturm told the Board that testimony about the best interests of children in a custody dispute by a therapist who had not observed both parents' interactions with the children was unethical. Sturm further stated that under Ethical Principle 3.c, a psychologist has an obligation to adopt an impartial stance and to avoid actions that would escalate the adversarial nature of the relationship between the parents. When asked about Ethical Principle 8.c, Sturm explained that psychologists have "an ethical responsibility to anticipate the possible purposes" behind a request to prepare an affidavit to be used in a custody dispute, in order to prevent misuse of the evaluation, and agreed that "[p]ractices such as making evaluative or conclusory statements about persons or relationships not observed directly * * * are blatantly unethical." Petitioner's affidavit made such conclusory statements, and it was not until the show-cause hearing that petitioner admitted to her bias toward her patient.

We conclude that petitioner's affidavit, which stated as fact that Theresa Ingram was a battered spouse and which stated that the best interests of the children required more time with their mother, together with petitioner's testimony at the hearing, where she gave her opinion as to the best disposition of custody despite having admitted her bias toward Theresa Ingram, were substantial evidence to support the

Board's conclusion that petitioner had violated her professional responsibilities as a licensed psychologist.

Affirmed.

**EDMONDS, J.,** concurring.

The majority opinion is correct and well reasoned in my view. I write only to comment that there is no persuasive evidence that the trial court was misled by petitioner's affidavit or testimony. At the time it made its ruling, it was aware that petitioner had not interviewed the complainant. Finally, I note that the literal application of Principle 3.c deprives trial courts of the benefit of what is generally helpful evidence regarding child custody and visitation issues. It will be a rare occurrence where a psychologist treating one parent will have the opportunity to interview and evaluate the other parent before rendering an opinion on behalf of the children. It is unfortunate that trial courts will be deprived of such beneficial evidence before rendering what are always gut-wrenching decisions.